Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES CORCORAN,<br><br>Plaintiff,<br><br>v.<br><br>CHIEF GLEN CAUWELS,<br>*In his individual and official capacities*,<br>Defendant. | Civil Action No. 18-13875 (ES) (JAD)<br><br>OPINION |

SALAS, DISTRICT JUDGE

Before the Court is Defendant Chief Cauwels's ("Defendant") motion to dismiss Plaintiff James Corcoran's ("Plaintiff") Complaint. (D.E. No. 5). The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3). Having considered the parties' submissions,[1] the Court decides this matter without oral argument. *See* Local Civ. R. 78.1(b). As set forth below, the Court DENIES Defendant's motion to dismiss.

I.  **Background**[2]

Plaintiff and Defendant are police officers employed by the Borough of Fair Lawn Police Department ("FLPD"). (Compl. ¶¶ 5–6). The Borough of Fair Lawn ("Fair Lawn") is a municipality which maintains and controls the FLPD. (*Id.* ¶ 7). In 2006, Plaintiff was Vice President for the local chapter of the Patrolmen's Benevolent Association ("PBA"), and Defendant was a union representative for the Superior Officers Association ("SOA"). (*Id.* ¶¶ 11–12). Around that time,

---

[1] (D.E. No. 1, Complaint ("Compl."); D.E. No. 5-1, Brief in Support of Defendant's Motion to Dismiss ("Def.'s Mov. Br."); D.E. No. 9, Brief in Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp. Br."); D.E. No. 10, Defendant's Reply to Brief in Opposition ("Def.'s Reply Br.")).

[2] The Court must accept Plaintiff's factual allegations as true for purposes of resolving the pending motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

Plaintiff learned that Lieutenant William Yirce ("Lt. Yirce"), a SOA member, was using money earmarked for a "Police Unity Tour" bicycle ride for his personal benefit. (*Id.* ¶ 14). The issue escalated in 2007, when, during a PBA meeting, Plaintiff "requested an accounting" of the funds from Lt. Yirce and another SOA member. (*Id.* ¶¶ 14–15). In March 2007, Plaintiff also made New Jersey Open Public Records Act ("OPRA") requests to Fair Lawn for emails between Lt. Yirce, Defendant, and other SOA members. (*Id.* ¶ 16). Plaintiff withdrew these requests after his supervising Captain told him that they could cause "issues" for those individuals. (*Id.* ¶ 17). In 2009, Defendant alleged that Plaintiff was profiling Caucasian citizens during traffic stops. (*Id.* ¶ 21). In 2010, Defendant became a Captain and assumed command of the Internal Affairs ("I.A.") unit. (*Id.* ¶ 24). In this position, Defendant "initiated no less than six . . . internal affairs complaints against Plaintiff." (*Id.* ¶ 26). Furthermore, Defendant investigated his own complaints "contrary to accepted practices and policies . . . established by the New Jersey Attorney General's Internal Affairs Guidelines." (*Id.* ¶ 27). When Plaintiff was under investigation in 2011, Defendant stated "this is the best thing ever." (*Id.* ¶ 29). Although Plaintiff had engaged in no wrongdoing, Defendant "refused to exonerate Plaintiff, and instead found that the complaint was 'not sustained.'" (*Id.*). Also in 2011, Defendant initiated an I.A. complaint against Plaintiff for towing cars. (*Id.* ¶ 30). When exonerating video of the incident was recovered, Defendant stated that "if not for the video, the complaint would have been sustained." (*Id.*).

In 2014, Defendant—then interim Chief of Police—approved another I.A. complaint against Plaintiff, of which he was ultimately exonerated. (*Id.* ¶ 32–33). During the investigation of this complaint, Plaintiff was interviewed and received permission to record this interview with a handheld recorder. (*Id.* ¶ 34). Afterwards, however, Defendant ordered Plaintiff's Captain—Captain Patterson[3]—to seize the recorder. (*Id.*). In 2015, Defendant initiated another I.A. complaint against

---

[3] The Complaint refers to Captain Patterson without a first name. (*See generally* Compl.).

Plaintiff for the handling of an arrest, even though Plaintiff "was complying with the directions of the Bergen County Prosecutor's Office." (*Id.* ¶ 35). As a result, Plaintiff was suspended for three days. (*Id.*). Plaintiff was suspended for another five days in February 2016, after Defendant "instituted another I.A. complaint against Plaintiff." (*Id.* ¶ 36). In August 2016, Defendant instituted "another baseless [I.A.] investigation" against Plaintiff. (*Id.* ¶ 37). In May 2017, Plaintiff was suspended for six days after he told a citizen that "the [Defendant] might not be present at Headquarters because [he] liked to play golf." (*Id.* ¶ 38).

During 2015, Plaintiff and another officer, Brian LaRosa, sought to be promoted to two available Captain spots. (*Id.* ¶ 39–41). Defendant, however, had Captain Patterson ask a third officer, Joseph Dawicki, to apply for one of the two spots. (*Id.* ¶ 45). After taking the Captain's exam, Plaintiff ranked "8-10 points higher than both of the other candidates." (*Id.* ¶ 47). Despite the rankings, "the FLPD, through Defendant, promoted" LaRosa and Dawicki in March of 2018. (*Id.* ¶ 48).

Plaintiff filed this action against Defendant in his individual and official capacities, alleging Defendant violated Plaintiff's First Amendment rights under 42 U.S.C. § 1983. (*Id.* ¶ 56). Defendant moves to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, arguing generally that Plaintiff has failed to plead causation and individual liability. (Def.'s Mov. Br. at 14–19). Alternatively, Defendant argues that Plaintiff's claim is barred by the statute of limitations and that Defendant is entitled to qualified immunity. (*Id.* at 20–26).

II. **Legal Standard**

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"When reviewing a motion to dismiss, [a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). But the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### III. Analysis

The Court denies Defendant's motion because; (i) Plaintiff has pled sufficient facts to state a claim for a violation of the First Amendment under 42 U.S.C. § 1983; (ii) the Complaint is not barred by the statute of limitations; and (iii) Defendant is not entitled to a finding of qualified immunity at this stage.

In order to plead a First Amendment retaliation claim under § 1983, "a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir.

4

2006). Defendant first argues that the Complaint fails to establish causation as required by the third prong. (Def's. Mov. Br. at 14–18).

## A. Causation

Defendant argues that the gap between Plaintiff's OPRA requests and the FLPD's failure to promote him was too long and tenuous to infer causation. (*Id.* at 17–18). Plaintiff counters that Defendant's complaints, investigations, and comments over the years establish a causal connection between Plaintiff's conduct and the failure to promote. (Pl.'s Opp. Br. at 14). The Court agrees that Plaintiff's allegations are sufficient to create a reasonable inference of causation at this stage.

The causation element is generally "a question of fact for the jury." *Falco v. Zimmer*, 767 F. App'x 288, 310 (3d Cir. 2019) (quoting *McGreevy v. Stroup*, 413 F.3d 359, 364 (3d Cir. 2005)). At the motion to dismiss stage a court is "obliged to accept [a plaintiff]'s factual allegations as true and to draw reasonable inferences regarding causation in [his] favor." *Conard v. Pa. State Police*, 902 F.3d 178, 184 (3d Cir. 2018). To sufficiently plead causation, a plaintiff must plead that the protected conduct was a "substantial or motivating factor" for the alleged retaliation. *Id.* (quoting *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016)). "While 'unusually suggestive' timing can provide evidence of causation, causation also can be shown 'from the evidence gleaned from the record as a whole.'" *Id.* (quoting *Watson*, 834 F.3d at 422). Defendant argues that "a lack of temporal proximity *can* lead the factfinder to conclude" the causal link is too tenuous (Def.'s Mov. Br. at 15) (emphasis added). However, even a wide temporal gap can be narrowed by a showing of additional evidence established after appropriate discovery. *See Conard*, 902 F.3d at 184–85 (holding that there is no bright line rule regarding proximity and that plaintiff sufficiently pled causation despite a nearly nine-year gap between the alleged protected conduct and retaliation).

Here, the Complaint contains allegations of no fewer than six I.A. complaints against Plaintiff, initiated or authorized by Defendant during the 11-year period. (*See* Compl. ¶ 26). Plaintiff also

5

alleges that Defendant made comments such as "this is the best thing ever" and "if not for the video, the complaint would have been sustained" when referring to investigations of the Plaintiff. (*Id.* at ¶¶ 29–30). Plaintiff further alleges that Defendant ordered Captain Patterson to seize the recorder Plaintiff was permitted to use during an investigation interview. (*Id.* at ¶ 34). Taken together and viewed in a light most favorable to Plaintiff, these allegations create a reasonable inference of causation.

Defendant argues that the discrepancy between Plaintiff's allegations and his promotions during the time period, do not create a "pattern" with which the Court may use to infer causation. (Def.'s Reply Br. at 12). However, Plaintiff is not required to show any pattern at this stage. Rather, Plaintiff's burden is even less than a showing that his "protected conduct was the 'but for' cause" of Defendant's actions. *Falco*, 767 F. App'x at 311 (quoting *Suppan v. Dadonna*, 203 F.3d 228, 236 (3d Cir. 2000)). Furthermore, the cases Defendant cites to support his argument involve Title VII of the Civil Rights Act—not § 1983—and the plaintiffs in those cases did not allege *any* misconduct in the intervening period that tied the protected activity to the retaliation. (Def.'s Reply Br. at 11); *see Suri v. Foxx*, 69 F. Supp. 3d 467 (D.N.J. 2014); *Rosado v. Mueller*, No. 15-3999, 2016 WL 4435672 (D.N.J. Aug. 17, 2016). Plaintiff plainly satisfies his burden at the pleading stage, and "should be afforded the opportunity to develop proof of causation through discovery." *See Conard*, 902 F.3d at 183.

### B. Individual Liability

Defendant further asserts that he is not individually liable because Plaintiff failed to plead that the OPRA requests were a "substantial or motivating factor in the decision not to promote him," and that local ordinances delegate promotional authority to the Borough Manager, not Defendant. (Def.'s Mov. Br. at 18–19). Defendant, however, mischaracterizes the law regarding individual liability.

6

As discussed above, the "substantial or motivating factor" standard applies to causation in general and, in this case, is plausibly pled. *See supra* Section III.A. In a § 1983 claim, a plaintiff can successfully plead a defendant's individual liability by alleging "participation or actual knowledge and acquiescence" in the retaliatory action. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). These allegations must be pled with "appropriate particularity." *Id.*; *compare Chinniah v. E. Pennsboro Twp.*, 761 F. App'x 112, 115–16 (3d Cir. 2019) (holding that allegations that tax bureau raised assessment due to defendants' misinformation were sufficient to plead individual liability), *and Boykins v. Ambridge Area Sch. Dist.*, 621 F.2d 75, 80 (3d Cir. 1980) (holding that allegations were pled with particularity when they included the conduct, motive, people responsible, time, and place), *with Mincy v. Chmielsewski*, 508 F. App'x 99, 104 (3d Cir. 2013) (finding that an alleged conversation between plaintiff and defendant regarding missing property was "insufficient to establish personal involvement or actual knowledge").

At this stage, it is enough for Plaintiff to plead that Defendant encouraged a third applicant to take the Captain's exam and then promoted the other two individuals on March 1, 2018. (*See* Compl. ¶¶ 43–48). Such conduct sufficiently raises an inference that Defendant personally participated in or actually knew and acquiesced to the non-promotion of Plaintiff. *See Chinniah*, 761 F. App'x at 115. Defendant nevertheless maintains that he is not individually liable because the Borough Manager has sole authority regarding promotions. (Def.'s Mov. Br. at 18–19). However, courts consider whether a defendant is a final authority—i.e. a policymaker—on promotion decisions when adjudicating claims against a municipality under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).[4]

---

[4] A plaintiff bringing a § 1983 claim against a municipality based on an act of a policymaker must show, under *Monell*, that the officer had "final policy-making authority . . . *in the particular area* of municipal business in question." *Hill*, 455 F.3d at 245 (3d Cir. 2006). Here, the Complaint alleges that Defendant "constitutes a policymaker for the [FLPD] and the Borough [of Fair Lawn]." (Compl. ¶ 8). While Plaintiff's § 1983 claim against Defendant in his official capacity is the functional equivalent of a *Monell* claim, *see Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006), Defendant does not argue for dismissal of Plaintiff's claim against him in his official capacity, including under the *Monell* doctrine. (*See generally* Def.'s Mov. Br.; Def.'s Reply Br.). Accordingly, the Court reserves its decision as to the scope of Defendant's policymaking authority for purposes of *Monell* liability until this issue is squarely before the Court. *See*

7

*See Mrazek v. Stafford Twp.*, No. 13-1091, 2017 WL 1788655, at *9–14 (D.N.J. May 5, 2017), *aff'd*, 744 F. App'x 69 (3d Cir. 2018) (holding that the chief was not the final "policymaker" for promotional decisions under New Jersey state law, and that the local administrative code did not delegate this authority to the chief). For purposes of stating a claim against Defendant in his individual capacity, it is sufficient for Plaintiff to plead that Defendant "played an 'affirmative part' in the alleged misconduct." *See Alexander v. Fritch*, 396 F. App'x 867, 874 (3d Cir. 2010); *see also Mrazek*, 2017 WL 1788655, at *8 n.3 (holding allegations of improperly influencing officer's scores in the promotion exam process were enough to overcome summary judgment). Plaintiff's allegations, at the very least, create a reasonable inference that Defendant influenced the failure to promote. (*See* Compl. ¶¶ 43–48). Discovery might uncover good reason for the failure to promote or that it was unrelated to Plaintiff's OPRA requests. *See Weston v. Passaic Cty.*, No. 14-0062, 2014 WL 2094095, at *3 (D.N.J. May 20, 2014). "At this juncture, however, the Court is obligated to make all reasonable inferences in [Plaintiff's] favor." *Id.*

## C.    Statute of Limitations

Defendant argues that any events that took place before the alleged failure to promote in 2018 are outside the two-year statute of limitations period allowed under a § 1983 claim. (Def.'s Mov. Br. at 20–21). Plaintiff counters that the 2017 suspension and 2018 failure to promote are within the two-year period, and that the events that occurred prior to 2016 can be considered to create a causal connection. (Pl.'s Opp. Br. at 22).

The statute of limitations for a § 1983 claim is two years from accrual. *O'Connor v. City of Newark*, 440 F.3d 125, 126–27 (3d Cir. 2006). In the context of claims against an employer, whether a claim accrues depends on whether it is based on discrete acts or acts that aggregate into a hostile

---

*Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016) ("When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim.").

8

work environment claim. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–22 (2002); *O'Connor*, 440 F.3d at 128 (holding that *Morgan* applies to § 1983 claims). Wrongful suspensions, wrongful accusations, wrongful discipline, and failure to promote are all examples of discrete acts. *O'Connor*, 440 F.3d at 127. Unlike hostile work environment claims, discrete acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113. "The existence of past acts . . . however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and . . . timely filed." *Id.* Furthermore, these past acts, although not individually actionable, can be used "as background evidence in support of a timely claim." *Id.*

The Court finds that the alleged wrongful suspensions, investigations, and accusations that occurred before 2016 are time barred as independent claims because they are discrete and outside the two-year period. (*See* Compl.). Nevertheless, the alleged 2017 suspension and 2018 failure to promote are discrete acts within the statute of limitations. (*See* Compl. ¶¶ 38–48). The Court may also properly consider the events before 2016 as background evidence in support of Plaintiff's claims founded upon the 2017 and 2018 events. *See Morgan*, 536 U.S. at 113. Therefore, to the extent Plaintiff's claim is based on the discrete acts that occurred in 2017 and 2018, it is not barred by the statute of limitations.

## D. Qualified Immunity

Qualified immunity insulates government officials from the burdens of litigation and civil liability. *Walter v. Pike County*, 544 F.3d 182, 190 (3d Cir. 2008). In determining the applicability of qualified immunity, a court must determine (i) whether the alleged facts demonstrate a violation of a constitutional right and (ii) whether that right was "'clearly established' at the time of [a] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). While both prongs are required, courts may address them in any order. *Id.* at 239–40.

9

### 1. Violation of a Constitutional Right

The speech of a public employee is a constitutionally protected right "when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241–42 (3d Cir. 2006) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). As the parties do not raise the third element, and because it is "better left for the summary judgment stage," *Khan v. City of Paterson*, No. 17-5006, 2018 WL 2059550, at *10 (D.N.J. May 2, 2018), the Court addresses only the first two.

#### a. Private Citizen

A public employee does not speak as a private citizen when the statement made is "pursuant to their official duties." *Palardy v. Twp. of Millburn*, 906 F.3d 76, 81 (3d Cir. 2018) (quoting *Garcetti*, 547 U.S. at 421), *cert. denied*, 139 S. Ct. 2011 (2019). A statement pursuant to one's official duties does not merely concern those duties but is part of a public employee's "ordinary job responsibilities." *Flora v. Cty. of Luzerne*, 776 F.3d 169, 178 (3d Cir. 2015) (quoting *Lane v. Franks*, 573 U.S. 228, 237 (2014)). In other words, a public employee speaks as a private citizen when making a statement that is not part of "the tasks he was paid to perform." *Id.* (quoting *Lane*, 573 U.S. at 239); *see also Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2471 (2018) ("[E]mployee speech is largely unprotected if it is part of what the employee is paid to do."). Furthermore, a public employee's speech is not protected if the speech could only have occurred because of his public employment. *See, e.g., 56 Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 244 (3d Cir. 2016) (holding that filling out internal police counseling forms is not protected because citizens do not fill out such forms); *De Ritis v. McGarrigle*, 861 F.3d 444, 454 (3d Cir. 2017) ("[A]n employee does not speak as a citizen if the mode and manner of his speech

were possible only as an ordinary corollary to his position as a government employee.").

Defendant argues that Plaintiff did not speak as a private citizen because he made the OPRA requests in his capacity as a union leader. (Def's Mov. Br. at 25; Def.'s Reply Br. at 5). Although the Third Circuit has not explicitly determined whether union activities are categorically protected or unprotected, other Courts of Appeals have used similar reasoning to establish a bright-line rule that union activities are protected from retaliation under the First Amendment.[5] *See, e.g., Boulton v. Swanson*, 795 F.3d 526, 534 (6th Cir. 2015) (holding that speech in connection with union activities is done "as a citizen" because job responsibilities do not include acting as a union member); *Swetlik v. Crawford*, 738 F.3d 818, 826 (7th Cir. 2013) (holding statements made as a union representative are not part of official police duties and thus are afforded First Amendment protection); *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1060 (9th Cir. 2013) ("Given the inherent institutional conflict of interest between an employer and its employees' union, we conclude that a police officer does not act in furtherance of his public duties when speaking as a representative of the police union.").

Furthermore, Defendant contends that the OPRA requests were unprotected speech because they were related to "special knowledge" and "experience" acquired through Plaintiff's job. (Def.'s Reply Br. at 5). However, even Defendant's cited authority plainly holds that "speech *might* be considered part of [an employee's] official duties if it relates to 'special knowledge' or 'experience' acquired through his job." *See Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009) (emphasis added). In fact, it is not enough that the speech "owes its existence" to any "special knowledge" or "experience" acquired through one's professional duties. *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 990 (3d Cir. 2014). The Third Circuit refuses to read the "pursuant" standard under *Garcetti* so broadly as it would "eviscerate citizen speech by public employees simply because they learned the

---

[5] When the Third Circuit has not yet addressed a right asserted by a plaintiff, a district court must "routinely consider decisions by other Courts of Appeals." *Schmidt v. Creedon*, 639 F.3d 587, 598 (3d Cir. 2011) (quoting *Williams v. Bitner*, 455 F.3d 186, 192–93 (3d Cir. 2006)).

11

information in the course of their employment." *Id.* at 989; *see also Lane*, 573 U.S. at 240 ("[S]peech by public employees on subject matter related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment.").

Defendant also argues that complaints made "up the chain of command" are part of a public employee's duties and thus are not made as a private citizen. (Def.'s Reply Br. at 16). Defendant's reliance on *Goldrich v. City of Jersey City* is misplaced as that case involves a Plaintiff who explicitly and exclusively reported alleged misconduct to an individual supervisor within the union. No. 15-885, 2017 WL 6209205, at *5 (D.N.J. Dec. 8, 2017), *reconsideration denied*, No. 15-885, 2018 WL 3360764 (D.N.J. July 10, 2018). Furthermore, *Goldrich* relies on a Third Circuit decision which held that complaints made up the chain of command to a government agency supervisor were part of the employee's official duties—a distinct context from union activity. *See Morris v. Phila. Hous. Auth.*, 487 F. App'x 37, 39 (3d Cir. 2012). Plaintiff alleges that he asked for an accounting and made the OPRA requests in his capacity as a union member. (Compl. ¶¶ 15–16). Given the nature of OPRA requests and the fact that Plaintiff raised the issue at a PBA meeting, the alleged facts create a reasonable inference that Plaintiff acted as a private citizen—not solely as a union member reporting something up the chain of command. (*See id.*). Because this union activity does not fall within the scope of his "ordinary job responsibilities," *Flora*, 776 F.3d at 178, and since a citizen could also have filed a similar OPRA request, Plaintiff has sufficiently pled a protected activity.

    b.  **Public Concern**

Whether a statement addresses a matter of public concern is a question of law. *Curinga v. City of Clairton*, 357 F.3d 305, 310 (3d Cir. 2004). There is no bright-line rule dictating whether speech is a matter of public concern. *Montone v. City of Jersey City*, 709 F.3d 181, 194 (3d Cir. 2013). Rather, the Court must engage in a "case- and fact-specific inquiry" in making this determination. *Id.*

12

"An employee's speech addresses a matter of public concern when it can be 'fairly considered as relating to any matter of political, social, or other concern to the community.'" *Holder v. City of Allentown*, 987 F.2d 188, 195 (3d Cir. 1993) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). A court conducts a public-concern inquiry by examining the "content, form, and context" of the speech. *Id.* (quoting *Connick*, 461 U.S. at 147–48). In making this determination, no single factor is dispositive, and the Court must examine the entire record. *Snyder v. Phelps*, 562 U.S. 443, 453–54 (2011); *see also Zamboni v. Stamler*, 847 F.2d 73, 78 (3d Cir. 1988) (quoting *Rode*, 845 F.2d at 1201) ("'[c]omplete reliance' on the employee's motivation in speaking is inappropriate"). The content of speech may be a matter of public concern if it is "a subject of legitimate news interests" that addresses a subject of general interest and concern to the public. *Snyder*, 562 U.S. at 453 (quoting *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004)). For example, a public employee's speech addresses a matter of public concern if it "seeks to 'bring to light actual or potential wrongdoing or breach of public trust' on the part of government officials." *Holder*, 987 F.2d at 195 (quoting *Connick*, 461 U.S. at 148). Under this framework, the Third Circuit has found a public employee's criticism of internal office operations to be a matter of public concern. *Zamboni*, 847 F.2d at 77. Likewise, some union activities—e.g., criticism of management—may address matters of public concern. *Thomas v. Del. State Univ.*, 626 F. App'x 384, 388 (3d Cir. 2015); *accord Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999).

Defendant argues that the alleged corruption occurred within and affected only the union and was thus not a matter of public concern. (Def.'s Reply Br. at 5–10). In support of this argument, Defendant urges the Court to consider the union's website and find that the OPRA requests concerned only union funds and not "taxpayer money." (*Id.* at 7). But Plaintiff claims that he requested an accounting and made the OPRA requests in connection with allegations that members of the SOA—police officers—were misappropriating funds for personal gain. (Compl. ¶¶ 14–15). Members of the

public would be interested to learn of corruption or other wrongdoing by police officers in any capacity. *See Baldassare v. New Jersey*, 250 F.3d 188, 198 (3d Cir. 2001) ("[T]he public's interest in exposing potential wrongdoing by public employees is especially powerful.").

Furthermore, there is no indication in the Complaint, and Defendant does not argue, that Plaintiff made the OPRA requests because of a personal grievance. (*See generally* Compl.; Def.'s Mov. Br.; Def.'s Reply Br.); *see also Swineford v. Snyder Cty.*, 15 F.3d 1258, 1274 (3d Cir. 1994) (holding that personal grievances are not a matter of public concern). At this stage, Plaintiff has plausibly pled a matter of public concern by alleging that he learned individuals were misappropriating union funds that were earmarked for a police bicycle tour, requested an accounting from the accused individuals at a PBA meeting, and made OPRA requests for emails between the individuals. (Compl. ¶¶ 14–16).

Finally, assuming, *arguendo*, that the Court could consider the union website, such a consideration would further support the Court's findings because the site contains a portal to accept general donations from the public.[6] If the allegedly misappropriated "union funds" came from the public, this would create a stronger argument for a finding of public concern. *See Czurlanis v. Albanese*, 721 F.2d 98 (3d Cir.1983) (holding that criticism of wasting taxpayer's money was a matter of public concern). Given that Plaintiff's request for an accounting and subsequent OPRA requests are protected activities, and Plaintiff has plausibly pled that these activities addressed a matter of public concern, Plaintiff has plausibly pled a violation of his First Amendment rights.

### 2. Clearly Established

A right is clearly established if a reasonable state actor, under the circumstances, would understand that his conduct violates that right. *Williams v. Bitner*, 455 F.3d 186, 191 (3d Cir. 2006)

---

[6] *See Please Donate*, Police Unity Tour, https://secure.policeunitytour.com/registrant/Donate.aspx?eventid=245534&langpref=en-CA&Referrer=http%3a%2f%2fpoliceunitytour.com%2f (last visited June 26, 2019).

(citing *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "The right allegedly violated must be defined at the appropriate level of specificity." *Wilson v. Layne*, 526 U.S. 603, 615 (1999); *see also Zaloga v. Borough of Moosic*, 841 F.3d 170, 175 (3d Cir. 2016) (holding that it is too broad to simply state that the settled rule, as a general matter, prohibits government officials from retaliating for employees' speech). Accordingly, while "a qualified immunity defense does not demand that there had been a precise preview of the applicable legal analysis underlying the defense; what is required is that government officials have 'fair and clear warning' that their conduct is unlawful." *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014) (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1077 (9th Cir. 2001)). Thus, qualified immunity attaches if "reasonably competent" officers could disagree on the constitutionality of the conduct. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Since there is no direct precedent on whether the alleged misconduct in the instant case was a clearly established right when it occurred, the Court must analyze analogous factual settings in "the light most favorable to the party asserting the injury." *Mrazek*, 2017 WL 1788655, at *4 (quoting *Andrews v. Scuilli*, 853 F.3d 690, 697 n.8 (3d Cir. 2017)). The Third Circuit has "clearly established the illegality" of retaliating for a public employee's exercise of his First Amendment rights. *Id.* at *5. Furthermore, it is clearly established that retaliation against participation in a union is unlawful. *See, e.g., Palardy*, 906 F.3d at 84; *Schleig v. Borough of Nazareth*, 695 F. App'x 26, 31–32 (3d Cir. 2017). Additionally, a determination that the activity was a matter of public concern further supports a finding that it would be clear to a reasonable officer that such activity was protected. *Cf. Killion v. Coffey*, No. 13-1808, 2016 WL 5417193, at *17 (D.N.J. Sept. 27, 2016), *aff'd*, 696 F. App'x 76 (3d Cir. 2017) (finding that it was not clear to a reasonable officer that statements about police shift-work were clearly established rights since statements were not a matter of public concern). Finally, "[w]hen the balance of cognizable interest weighs so heavily in an employee's favor, our cases make plain that the law is clearly established." *Dougherty*, 772 F.3d at 994 (quoting *McGreevy*, 413 F.3d at 367).

In addition to the well-settled authority holding union membership is a clearly established right, Plaintiff's allegations create a reasonable inference that his activity was a matter of public concern. *See supra* Section III.D.1.b. Finally, Plaintiff's allegations that he took actions to uncover alleged wrongdoing by public officials create a reasonable inference that his interests outweigh those of his employer. *See Dougherty*, 772 F.3d at 991 (quoting *Swineford*, 15 F.3d at 1274) (holding that speech involving alleged abuse by public officials "occupies the highest rung of First Amendment protection").

Defendant also argues that Plaintiff bears the burden of showing that Plaintiff's actions were a clearly established constitutional right at the time of Defendant's alleged misconduct. (Def.'s Mov. Br. at 23). However, Defendant relies on a case considering qualified immunity at the summary judgment stage. *See Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997). But at the pleading stage, "a plaintiff has no obligation to plead a violation of clearly established law in order to avoid dismissal on qualified immunity grounds." *Thomas*, 463 F.3d at 293. Instead, Defendant bears the burden of pleading qualified immunity. *See id.* Here, Plaintiff's failure to state a claim of a violation of clearly established rights does not entitle Defendant to dismissal at this stage. *See id.* Plaintiff's allegations create a reasonable inference that Defendant violated a clearly established right. Plaintiff is not required to allege more, and Defendant has not sufficiently pled qualified immunity to be entitled to dismissal at this stage.

## IV. Conclusion

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**